IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SEAN MICHAEL HURLEY,                    )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )       Civil Action No. 23-414
                                        )
MARTIN O'MALLEY,                        )
*Commissioner of Social Security*,      )
                                        )
                    Defendant.          )

O R D E R

AND NOW, this 26th day of March, 2024, upon consideration of Defendant's Motion for

Summary Judgment (Doc. No. 16) filed in the above-captioned matter on August 29, 2023,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's *pro se* Motion for Summary Judgment

(Doc. No. 11) filed in the above-captioned matter on August 3, 2023,

IT IS HEREBY ORDERED that said Motion is GRANTED.  Accordingly, this matter is

hereby remanded to the Commissioner of Social Security ("Commissioner") for further

evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.      **Background**

Plaintiff Sean Michael Hurley received Title II Child Disability benefits for a number of

years, having most recently been found to be disabled as of August 22, 2007, on April 16, 2010.

(R. 16-18, 168-73).  Plaintiff's case was reviewed several years later, and on March 4, 2019,

Administrative Law Judge ("ALJ") Helen Valkavich determined that Plaintiff was no longer

disabled as of August 1, 2016.  (R. 191-202).  However, Plaintiff requested review from the

Appeals Council, and on September 5, 2020, the Appeals Council vacated the decision and remanded the case to the ALJ for further consideration.  Among the tasks to be done by the ALJ on remand was to determine whether medical improvement had occurred to Plaintiff's conditions by comparing "the signs, symptoms, and laboratory findings present at the comparison point decision with those present at the cessation date."  (R. 208-210).

After remand, telephonic hearings were held with ALJ Christian Bareford on December 22, 2020, and August 12, 2021.  (R. 16, 96-163).  On February 22, 2022, ALJ Bareford issued a decision finding that Plaintiff's disability ended on August 1, 2016 because medical improvement related to his ability to work had occurred.  (R. 16-28).  This time, the Appeals Council declined to review the ALJ's decision pursuant to a January 9, 2023 order.  (R. 1-3).  Plaintiff filed a *pro se* appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.  <u>Standard of Review</u>

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  *See* 42 U.S.C. § 405(g).  The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion.  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'"  *Id.*

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'"  *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).  As noted, the Commissioner here found that Plaintiff previously met this standard and most recently found him to be disabled as of August 22, 2007.

However, even if a claimant is found to be disabled, pursuant to 20 C.F.R. § 404.1594, the Social Security Administration ("SSA") is required periodically to determine whether "there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."  *Id.* at § 404.1594(a).

> Medical improvement is any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s).

*Id.* at § 404.1594(b)(1).  If the SSA finds that there has been such a decrease in the severity of the claimant's impairments, it must determine whether this has led to an increase in the claimant's functional capacity to do basic work activities.  *See id.* at § 404.1594(b)(3).  A previously disabled claimant who experiences such medical improvement and an increase in functionality may no longer be entitled to disability benefits.  *See id.* at § 404.1594(g).

In determining whether to continue a claimant's disability, the ALJ handling the matter uses a sequential evaluation process similar to the one used initially in determining whether a claimant is disabled.  *See id.* at § 404.1594.  At the first step, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity.  If so, the disability claim will be denied.  *See id.* at § 404.1594(f)(1).  If not, the ALJ must determine whether the claimant's impairments meet or equal the criteria for a listed impairment.  If a claimant meets a listing, a finding of disability is automatically directed.  *See id.* at § 404.1594(f)(2).  If not, Step Three requires the ALJ to determine whether there has been medical improvement in the claimant's impairments compared to the "comparison point decision" ("CPD") – the most recent favorable finding that the claimant is disabled.   If medical improvement has not occurred, the analysis proceeds to Step Five.  If it has occurred, the analysis proceeds to Step Four.  *See id.* at § 404.1594(f)(3).

At Step Four, if there has been medical improvement, the ALJ must decide whether this improvement is related to the claimant's ability to work.  If it is related, the analysis proceeds to

Step Six.  If not, it proceeds to Step Five.  *See id.* at § 404.1594(f)(4).  The fifth step – applicable

if medical improvement has not occurred or if any such improvement is not related to the

claimant's ability to work – requires a determination as to whether one of two sets of exceptions

apply.  If none apply, disability will continue.  If one of the exceptions in the first set apply, the

analysis proceeds to Step Six.  If one of the exceptions in the second set apply, disability will be

discontinued.  *See id.* at § 404.1594(f)(5).  At Step Six, the ALJ must determine whether the

claimant's current impairments are "severe."  *See id.* at § 404.1594(f)(6).  "An impairment or

combination of impairments is not severe if it does not significantly limit [the claimant's]

physical or mental ability to do basic work activities."  *Id.* at § 404.1522.  If the claimant's

current impairments are not severe, disability ends.  If they are, the analysis continues to Step

Seven.

Step Seven requires the ALJ to consider whether the claimant retains the residual

functional capacity ("RFC") to perform his or her past relevant work.  *See id.* at

§ 404.1594(f)(7).  If the claimant is unable to resume his or her former occupation, the

evaluation then moves to the final step.  At this stage, the burden of production shifts to the

Commissioner, who must demonstrate that the claimant is capable of performing other available

work in the national economy.  *See id.* at § 404.1594(f)(8).  In making this determination, the

ALJ should consider the claimant's RFC, age, education, and past work experience.  *See id.*  If

the claimant can perform such work, he or she is no longer disabled.

## III.    <u>The ALJ's Decision</u>

In his February 22, 2022 decision, the ALJ found that the most recent favorable medical

decision finding Plaintiff to be disabled was the decision issued on April 16, 2010, and

determined this to be the CPD.  (R. 19).  The ALJ further found that, as of the date of the CPD,

Plaintiff had numerous severe impairments, including hypoplastic left heart syndrome, and that these impairments resulted in an RFC that rendered him disabled.  (R. 19-20).

In applying the sequential analysis, the ALJ found that that Plaintiff had not engaged in substantial gainful activity through the date of the decision.  (R. 20).  He further found that Plaintiff's impairments as of August 1, 2016, were the same as in the CPD (with the addition of cardiac liver cirrhosis), continued to be severe, and did not meet any of the listings.  (R. 20-21, 22).  The ALJ proceeded to find that medical improvement had occurred on August 1, 2016, and that, as of that date, the impairments present on the date of the CPD had decreased in medical severity.  (R. 21-22).  He further determined that the medical improvement was related to Plaintiff's ability to work because it resulted in an increase in his RFC.  (R. 22-27).  Specifically, the ALJ found that, as of August 1, 2016, Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following modifications and addition limitations:

- He is capable of lifting and carrying 10 pounds occasionally and less than 10 pounds frequently and can push and pull as much as he can lift and carry.
- He could climb occasionally.
- He could maintain balance over narrow, slippery, or erratically moving surfaces occasionally.
- He could occasionally stoop, kneel, crouch, and crawl.
- He could never work at unprotected heights or in close proximity to (within arm's reach of) dangerous moving mechanical parts.

(R. 23).

After making this determination, the ALJ found that Plaintiff had no past relevant work. He further found that in light of the testimony of a vocational expert and based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the representative occupations of inspector, addresser, and order clerk.  (R. 27-28, 154-56).  Accordingly, the ALJ found that Plaintiff's disability ended as of August 1, 2016.  (R. 28).

**IV.  Legal Analysis**

Plaintiff argues that the ALJ's determination that he underwent a medical improvement beginning on August 1, 2016, and that the medical improvement was related to his ability to work because it resulted in an increase in his RFC, is not supported by substantial evidence.  The Court agrees and, accordingly, remands for reconsideration of this issue.

"A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)."  20 C.F.R. § 404.1594(b)(1).  If there has been such improvement, the ALJ must next determine whether the decrease in the severity of the claimant's impairments has led to an increase in the claimant's functional capacity to do basic work activities.  *See id.* at § 404.1594(b)(3).  This analysis, therefore, requires two distinct findings:

> To apply the medical improvement test, the ALJ must *first* compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled.  *See id.* at § 404.1594(b)(7).  ***Then***, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) which was present at claimant's last favorable medical decision.  *See id.* at § 404.1594(c)(2).

*Shepherd v. Apfel*, 184 F.3d 1196, 1201 (10th Cir. 1999) (emphasis added).  *See also Smalls v. Comm'r of Soc. Sec.*, Civ. No. 09-2048 (JLL), 2010 WL 2925102, at *4 (D.N.J. July 19, 2010); 20 C.F.R. § 404.1594(b)(7).  The problem here is that the ALJ, at least in part, conflated the analysis as to whether medical improvement had occurred and the analysis as to whether it related to Plaintiff's ability to work, rendering the first finding inadequate.

In finding that relevant medical improvement had occurred in Plaintiff's conditions, the ALJ relied primarily on medical records from February 2016 through March 2017.  While

acknowledging that Plaintiff suffered from the same impairments, particularly heart-related impairments, he noted that the records generally showed that Plaintiff was stable from a cardiac perspective and that he had no specific concerns at the time.  The ALJ also noted that Plaintiff was not taking his medications regularly during this period.  In addition, he relied on the opinion of state consulting agent Paul Reardon, M.D., that Plaintiff had experienced "significant medical improvement."  (R. 178-79).  The ALJ concluded that "the claimant's condition did not markedly worsen on or prior to August 1, 2016."  (R. 21-22).

However, as noted above, the question is not whether Plaintiff's condition "markedly worsened," but whether there had been medical improvement in the claimant's impairments compared to the CPD – in this case the April 16, 2010 decision.  As Plaintiff points out, a finding that he was "stable," *i.e.*, that his condition did not decline during that time, does not show improvement from his already disabling impairments.  Stability, particularly for someone like Plaintiff with hypoplastic left heart syndrome, does not necessarily equate with improvement. Indeed, Plaintiff's primary treating cardiologist, Lee Beerman, M.D., expressly opined on November 19, 2021, that Plaintiff's condition did not and would not improve over time, but rather was "progressive and permanent."  (R. 1497).  After Plaintiff's supposed improvement in 2016, in October of 2018, Dr. Beerman has recommended that Plaintiff start looking into a heart transplant procedure.  (R. 1418).

The primary problem is that the ALJ did not sufficiently focus on comparing Plaintiff's medical conditions as of 2016 with those same conditions in April of 2010 when he was last found to be disabled.  For instance, although the ALJ discussed Plaintiff's treatment notes and clinical examination findings from February 2016 through March 2017 in significant detail, he did not compare these findings to any earlier findings.  In other words, he did not consider

whether the findings were significantly different than they had been in 2010; indeed, there is virtually no discussion of the evidence from the time of the CPD.  As noted, the ALJ's first task was to "compare the medical severity of the current impairment(s) to the severity of the impairment(s) which was present at the time of the most recent favorable medical decision finding the claimant disabled."  *Shepherd*, 184 F.3d at 1201.  This was reiterated by the Appeals Council when it remanded the matter on September 5, 2020, in part for consideration as to whether medical improvement had occurred to Plaintiff's conditions by comparing "the signs, symptoms, and laboratory findings present at the comparison point decision with those present at the cessation date."  (R. 208-210).  This comparison did not happen here.

Without a proper consideration as to whether medical improvement occurred, the analysis does not proceed to the next step of determining whether that medical improvement is related to ability to work, which would include a reassessment of the RFC.  And without a more focused comparison of Plaintiff's impairments between 2016 and 2010, the Court cannot determine whether the evidence cited by the ALJ demonstrates medical improvement or simply a lack of specific complications at a single moment in time.  Accordingly, further consideration of this matter is warranted.

**V.**    **Conclusion**

In short, the Court holds that the finding of the ALJ that Plaintiff, on August 1, 2016, experienced medical improvement related to his ability to work is not supported by substantial evidence.  The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:        Counsel of record

cc:         Sean Michael Hurley
            246 South Main Street
            Slippery Rock, PA 16057